IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE BRAMLETT, | No. CIV S-06-2022-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| MICHAEL J. ASTRUE[1], Commissioner of Social Security, | |
| Defendant. | |
| _____/ | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the consent of the parties, this case is before the undersigned for final decision on plaintiff's motion for summary judgment (Doc. 17) and defendant's cross-motion for summary judgment (Doc. 19).

/ / /

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Michael J. Astrue is substituted for his predecessor. The Clerk of the Court is directed to update the docket to reflect the above caption.

1

# I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on September 13, 2004. In her application, plaintiff claims that disability began on January 31, 1997. Plaintiff claims her disability consists of a combination of back pain, carpal tunnel in both hands and left knee pain. Plaintiff's claim was initially denied. Following denial of her request for reconsideration, plaintiff requested an administrative hearing, which was held on March 1, 2006, before Administrative Law Judge ("ALJ") Antonio Acevedo Torres. In his May 25, 2006, decision, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 416.920(b) and 416.971 *et seq.*).

2. The claimant has the following severe combination of impairments: carpal tunnel syndrome and mild back strain (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to stand, walk and sit six hours in an eight-hour day, and lift and carry 10 pounds frequently and 20 pounds occasionally.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on January 29, 1962 and is 44 years of age, which is defined as a younger individual 18-44 (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).

10. The claimant has not been under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 416.920(g)).

After the Appeals Council declined review on July 18, 2006, this appeal followed.

## II.  SUMMARY OF THE EVIDENCE

Plaintiff provides the following summary of the evidence, which the court accepts:

<u>Sacramento County Clinic Services</u>

>	July 16, 1998, progress notes indicated that Ms. Bramlett presented with bilateral hand and wrist pain. She reported tingling and numbness that extended to her fingers, and she denied any injury.  Examination indicated that Ms. Bramlett had mild tenderness, and was positive for Phalen's signs, and negative for Tinel's sign. Ms. Bramlett was assessed with bilateral carpal tunnel syndrome. It was indicated that she could perform only light duty work. She was prescribed Motrin and carpal tunnel syndrome braces for her wrists. TR 110.

>	February 22, 1999, treatment notes indicated that Ms. Bramlett was still being treated with Motrin. TR 106.

>	March 10, 2000, progress notes indicated that Ms. Bramlett was still being treated for pain with Motrin. The records confirmed that Ms. Bramlett suffered from bilateral carpal tunnel syndrome and had been prescribed hand splints. Notes further indicated she was positive for substance abuse. TR 105. Notes of the same date indicated that Ms. Bramlett reported suffering a dislocated shoulder approximately one year before this treatment date. TR 104. Notes of the same date indicated that Ms. Bramlett continued to be diagnosed with bilateral carpal tunnel syndrome and was prescribed Motrin 800 mg. TR 103.

>	March 14, 2000, laboratory results indicated that Ms. Bramlett's toxic substance screen was completely negative. TR 101.

>	March 28, 2000, treatment notes indicated that Ms. Bramlett received followup treatment for her carpal tunnel syndrome. She continued to take Motrin 800 mg. Ms. Bramlett indicated that she wanted more wrist splints and an appointment to see another doctor for her wrist problems. TR 98.

>	May 3, 2000, treatment notes indicated that Ms. Bramlett continued to be diagnosed with bilateral carpal tunnel syndrome, and was newly diagnosed with high blood pressure. It was also indicated that she should undergo a lipid profile laboratory test. TR 97.

///

|   |   |
|---|---|
| 1 | May 10, 2000, treatment notes indicated an appointment for lab work was set for Ms. Bramlett. TR 96. |
| 2 | |
| 3 | June 6, 2000, treatment notes indicated that Ms. Bramlett continued to have cramping in both her arms and wrists. TR 95. |

May 10, 2000, treatment notes indicated an appointment for lab work was set for Ms. Bramlett. TR 96.

June 6, 2000, treatment notes indicated that Ms. Bramlett continued to have cramping in both her arms and wrists. TR 95.

January 23, 2001, treatment notes indicated that Ms. Bramlett was treated for a fractured left ankle, including a prescription for Motrin. TR 93. Ms. Bramlett was also prescribed Vicodin as needed for her pain. TR 94.

January 26, 2001, treatment notes indicated that Ms. Bramlett received followup treatment for her broken left ankle, and continued to be prescribed Motrin. TR 91.

A January 29, 2001, radiology report indicated that Ms. Bramlett had sustained a fracture through the distal fibula without any offset. Notes indicated that there was a suggestion of slight narrowing along the upper lateral portion of the ankle mortise. TR 92.

January 30, 2001, treatment notes indicated that Ms. Bramlett received further followup treatment for her fractured ankle, and continued to be prescribed Motrin as needed for pain. TR 90.

February 21, 2001, treatment notes indicated that Ms. Bramlett received followup treatment for her left fibula fracture, and continued to be prescribed Motrin for pain. TR 88.

March 21, 2001, treatment notes indicated that Ms. Bramlett received further followup treatment for her left fibula fracture. Notes indicated that she was prescribed a cane or crutch for partial weight bearing, and she had a splint applied to her ankle. TR 86.

October 8, 2004, treatment notes indicated that Ms. Bramlett was assessed with left sided headaches and bilateral carpal tunnel syndrome. She was also assessed with lumbar/low back pain. Notes also indicated that her bilateral hand pain increased at night. She was prescribed Motrin for her pain. TR 85.

February 3, 2006, treatment notes indicated that Ms. Bramlett continued to be diagnosed with low back pain and carpal tunnel syndrome. TR 114.

(Plaintiff's Motion at 2-4).

///

///

4

### III. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### IV. DISCUSSION

In her motion for summary judgment, plaintiff argues that the ALJ erred in three ways in determining that she was not disabled. Specifically, plaintiff argues: (1) the ALJ failed to provide plaintiff with meaningful notice of her right to counsel; (2) the ALJ failed to credit plaintiff's testimony as to the nature and extent of her limitations; and (3) the ALJ failed to show that plaintiff could perform substantial gainful work that exists in the national economy. As to this last claim, plaintiff specifically alleges that the ALJ failed to properly assess plaintiff's

Residual Functional Capacity (RFC) and erred in utilizing the Medical-Vocational Guidelines ("Grids") despite the presence of extensive nonexertional impairments and functional limitations.

### A. THE ALJ'S DUTY

Plaintiff argues that the ALJ failed to provide her "with *any* notice of her right to counsel – much less meaningful notice." (Plaintiff's Motion at 8.) She also claims the ALJ failed to properly develop the record and elicit relevant testimony from plaintiff.

#### 1. Notice Regarding the Right to Counsel

Plaintiff has a statutory right to counsel at the administrative hearing which may be knowingly and intelligently waived. Duns v. Heckler, 586 F. Supp. 359, 364 (N.D. Cal. 1984) (citing Ware v. Schweiker, 651 F.2d 408 (5th Cir. 1982), Floyd v. Schweiker, 550 F. Supp. 863 (N.D. Ill. 1982)). Even if the waiver is deficient, plaintiff must demonstrate prejudice or unfairness in the proceedings in order to obtain a remand. See Hall v. Sec'y of Health, Educ. & Welfare, 602 F.2d 1372, 1378 (9th Cir. 1979). The real issue, however, is not whether the waiver was knowing or intelligent, but whether without the representation, the ALJ met his burden "to conscientiously and scrupulously probe into, inquire of, and explore for all the relevant facts" in order to protect plaintiff's interest. See Duns, 586 F. Supp at 364 (quoting Vidal v. Harris, 637 F.2d 710, 713 (9th Cir. 1981)); see also Cox v. Califano, 587 F.2d 988 (9th Cir. 1978). This duty includes diligently ensuring that both favorable and unfavorable facts and circumstances are elicited at hearing. See Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985). The ALJ must fully and fairly develop the record, and when a claimant is not represented by counsel, an ALJ must be "especially diligent in exploring for all relevant facts." Tonapetyan v. Halter, 242 F.3d 1144 (9th Cir. 2001). Only if the plaintiff can show prejudice or unfairness in the administrative proceeding as a result of not having counsel is remand warranted. See Vidal, 637 F.2d at 713.

Plaintiff has not shown any prejudice or unfairness in the proceedings as a result of not having counsel. She argues that she was at a severe disadvantage in developing and

6

presenting her case given her limited education. However, she has not shown any actual prejudice. The ALJ examined plaintiff at the hearing as to how often she saw a doctor, what medications she was taking, what kind of pain relief they provide, how long she could do certain activities such as stand and sit, how she spends her day, and what activities she does. As the defendant points out, plaintiff has not identified any records or evidence which would have been included if she had legal counsel, nor has she alleged any new physical or mental impairments or treatments. Plaintiff fails to show how she was prejudiced by proceeding without counsel, or that the proceedings were unfair.

2. Duty to Develop the Record

The ALJ has an independent duty to fully and fairly develop the record and assure that the claimant's interests are considered. See Tonapetyan, 242 F.3d at 1150. When the claimant is not represented by counsel, this duty requires the ALJ to be especially diligent in seeking all relevant facts. See id. This requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." Cox, 587 F.2d at 991. Ambiguous evidence or the ALJ's own finding that the record is inadequate triggers this duty. See id. The ALJ may discharge the duty to develop the record by subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow for supplementation of the record. See id. (citing Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998)).

However, this does not mean that plaintiff may remain silent about her real complaints, or that plaintiff has no duty to present (and highlight) the relevant medical evidence to the ALJ. See Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so."). The ALJ can develop the record by (1) making a reasonable attempt to obtain medical evidence from the claimant's treating sources, (2) ordering a consultative examination when the medical evidence is incomplete or unclear and undermines ability to

7

1  resolve the disability issue; (3) subpoenaing or submitting questions to the claimant's physicians;
2  (4) continuing the hearing; or (5) keeping the record open for supplementation.  See Tonapetyan,
3  242 F.3d. at 1150; 20 C.F.R. 404.1517, 416.917; 42 U.S.C. § 423(d)(5)(A), (B).

4        Here, the ALJ made a reasonable attempt to obtain medical evidence, including
5  medical records from the Primary Care Center, which plaintiff informed him about at the hearing.
6  He also kept the record open for plaintiff to provide him with additional evidence, and provided
7  her instructions and the means of submitting the additional evidence.  The medical evidence
8  plaintiff submitted as evidence of her claims, in addition to her testimony, was sufficient to find
9  plaintiff was not disabled.  As the ALJ discussed in his findings, plaintiff was only seen for a
10 specific injury (her ankle) and for general exams in order to qualify for General Assistance.  She
11 was not seen and treated on an on-going basis for her carpal tunnel.  There is nothing in the
12 record to suggest a need for a consultative examination, nor does plaintiff indicate how a
13 consultative examination would have helped in the ALJ's determination.  The ALJ fulfilled his
14 duty to develop the record in the case.

15     B.    PLAINTIFF'S CREDIBILITY

16       Next, plaintiff argues the ALJ failed to properly credit her testimony regarding her
17 pain and limitations.

18       The Commissioner determines whether a disability applicant is credible, and the
19 court defers to the Commissioner's discretion if the Commissioner used the proper process and
20 provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  An explicit
21 credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903
22 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d
23 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible
24 and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative
25 evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not
26 credible must be "clear and convincing."  See id.

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See id. at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted).

Here, plaintiff claims her disability consists of carpal tunnel, high blood pressure, and back strain. She claims that she cannot function on a sustained basis at any exertional level. The ALJ found her high blood pressure is controlled with medication and is therefore not severe, which plaintiff does not challenge. The ALJ found plaintiff capable of standing, walking and sitting for six hours in an eight hour work day, and lifting and carrying 10 pounds frequently and 20 pounds occasionally. In support of this finding, the ALJ refers to plaintiff's lack of treatment for her alleged pain, her treating physician's finding of mild tenderness in her writs, and her minimal amount of pain medication. The ALJ also notes that plaintiff failed to follow her doctor's advise to follow up with her primary care physician, which he found indicates the symptoms she alleges are not especially troublesome. These are valid reasons for the ALJ to question plaintiff's testimony regarding the severity of her pain and functional limits. Although plaintiff's carpal tunnel syndrome would be expected to produce some degree of pain, the medical evidence and the plaintiff's own testimony regarding her daily activities indicate that the pain was not disabling and would not prevent her from performing any work.

///

C. PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY

Finally, plaintiff claims the ALJ failed to show she could perform work that exists in the national economy. She alleges he failed to properly assess her residual functional capacity, he used the Grids in error due to her non-exertional limitations, and he failed to utilize a vocational expert.

Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). In determining residual functional capacity, the ALJ must assess what the plaintiff can still do in light of both physical and mental limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a); see also Valencia, 751 F.2d at 1085.

The Grids provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity. The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity. See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations. See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); Heckler, 461 U.S. at 462 n.5. Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on strength factors only. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)). The

Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities.[2]  See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations.  See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  Specifically, where the Grids are inapplicable because plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony.  See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

Here, the ALJ found plaintiff has the residual functional capacity to stand, walk and sit for six hours in an eight-hour day, and lift and carry 10 pounds frequently and 20 pounds occasionally.  As the ALJ discussed, plaintiff testified that she can walk about one mile before she must rest, she can stand about an hour at a time, then must move and change positions, and can sit for two hours before having significant pain.  She also testified she can lift up to 20

---

[2]  Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a).  "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  See 20 C.F.R. §§ 404.1567(a) and 416.967(a).  "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  See 20 C.F.R. §§ 404.1567(b) and 416.967(b).  "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  See 20 C.F.R. §§ 404.1567(c) and 416.967(c).  "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.  See 20 C.F.R. §§ 404.1567(d) and 416.967(d).  "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more.  See 20 C.F.R. §§ 404.1567(e) and 416.967(e).

Non-exertional activities include mental, sensory, postural, manipulative, and environmental matters which do not directly affect the primary strength activities.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

pounds. Given plaintiff's direct testimony, the ALJ's finding of her residual functional capacity is well supported. Plaintiff argues that she has manipulative limitations which the ALJ failed to take into account. However, plaintiff fails to support that argument. She was diagnosed with carpal tunnel syndrome, and testified that at night she has pain in her hands which is relieved by the Motrin she has been prescribed. Nowhere in the record is there any indication that she has any manipulative limitation caused by this pain. In fact, she testified that the Motrin relieves her pain for about six hours at a time. This is not sufficient to find the ALJ erred in assessing her residual functional capacity.

As the ALJ did not err in assessing her residual functional capacity, and found plaintiff capable of performing a full range of light work, there was no error in using the Grids and not calling a vocational expert to testify. There is no evidence of sufficient non-exertional limitations requiring a vocational expert. As discussed above, the use of the Grids is appropriate where a claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities.

## V. CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

    1.    Plaintiff's motion for summary judgment is denied;

    2.    Defendant's cross-motion for summary judgment is granted; and

    3.    The Clerk of the Court is directed to enter judgment and close this file.

DATED: August 18, 2008

                                                                         */s/ Craig M. Kellison*
                                                                         **CRAIG M. KELLISON**
                                                                         UNITED STATES MAGISTRATE JUDGE